# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Spring Term

**FILED**

**May 1, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-ICA-262

_____

BLACKHAWK MINING, LLC,
Employer Below, Petitioner

v.

HARRIS ARGABRIGHT,
Claimant Below, Respondent

_____

Appeal from the Workers' Compensation Board of Review

(Appeal No.: 2058334)

(JCN: 2021020512)

REVERSED, in part, AFFIRMED, in part.

_____

Submitted: March 22, 2023

Filed: May 1, 2023

Jeffrey B. Brannon, Esq.                Lori J. Withrow, Esq.
Cipriani & Werner PC                     Reginald D. Henry, Esq.
Charleston, West Virginia                Reginald D. Henry, PLLC
Counsel for Petitioner                   Mabscott, West Virginia
                                         Counsel for Respondent

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:

Petitioner, Blackhawk Mining, LLC, ("Blackhawk") appeals the Workers' Compensation Board of Review ("BOR") affirmation of the Workers' Compensation Office of Judges' ("OOJ") order adding the diagnoses of disc bulges from L2-L3 through L5-S1 as compensable conditions and authorizing the request for a referral to Rajesh Patel, M.D. Based upon the parties' arguments, the record on appeal, and the applicable law, this Court finds that the BOR's October 21, 2022, order is clearly wrong in finding that the disc bulges are compensable conditions, but not clearly wrong in ordering a referral to Dr. Patel. Accordingly, we hereby reverse, in part, and affirm, in part, the BOR's October 21, 2022, order.

## I. Factual and Procedural Background

Respondent Harris Argabright, an electrician for Blackhawk Mining, was injured at work on February 26, 2021, when he tightened a strap on a speed reducer and felt something pull in his lower back/pelvis. Mr. Argabright sought medical treatment that day and was diagnosed with a lumbar sprain. X-rays revealed no acute abnormality, mild L3-L4 disc space narrowing, mild L5-S1 disc space narrowing, and bilateral facet arthropathy.

On March 9, 2021, Mr. Argabright underwent an MRI of his lumbar spine. The impression of the MRI showed degenerative disc desiccation and suggestion of mild disc bulge at T11-T12, and minimal to mild disc bulges from L2-L3 through L5-S1. On April 26, 2021, Mr. Argabright saw Jeffrey Prichard, PA-C, and reported low back pain with

1

decreased range of motion that was not improving. He was diagnosed with a lumbar sprain. On April 29, 2021, Michael Muscari, D.O., requested that Mr. Argabright be referred to Dr. Patel, noting an increase of pain, a decrease in range of motion, and a worsening symptoms.

Prasadarao Mukkamala, M.D., performed an independent medical examination ("IME") of Mr. Argabright on May 11, 2021. Dr. Mukkamala diagnosed lumbar sprain superimposed upon preexisting noncompensable degenerative spondyloarthropathy, and found that Mr. Argabright had reached Maximum Medical Improvement ("MMI"). Dr. Mukkamala assessed him with an 8% whole person impairment and apportioned 5% to preexisting conditions. Dr. Mukkamala also found there was no indication to refer Mr. Argabright for surgery or any other treatment, as there was no objective evidence of radiculopathy and no spinal instability. Based on this report, the claim administrator issued an order dated May 17, 2021, which denied the request for a referral to Dr. Patel. Mr. Argabright protested this order.

On June 21, 2021, Dr. Muscari submitted a diagnosis update requesting that "disc bulge L2, L3, L5, S1" be added as compensable conditions in the claim on the basis that the MRI showed multiple disc bulges.[1] By order dated July 1, 2021, the claim administrator denied this request. Mr. Argabright protested this order. Mr. Argabright submitted

---

[1] Dr. Muscari's diagnosis update fails to add the disc bulge at L4 as a compensable condition. However, the OOJ and the BOR found the disc bulge at L4 to be compensable.

correspondence from Dr. Muscari explaining that the referral to Dr. Patel was necessary because of Mr. Argabright's continuing symptoms and disability. Further, Dr. Muscari explained therein that Mr. Argabright was able to work his entire adult life as a coal miner prior to this work-related injury and had no previous lumbar pain.

On January 15, 2022, Michael Brooks, M.D. issued an age of injury analysis upon review of the March 9, 2021, MRI. Dr. Brooks opined that the findings on the MRI were consistent with chronic, degenerative disc disease and facet joint arthrosis.

On May 19, 2022, the OOJ reversed the claim administrator's orders, found the disc bulges at L2-L3 through L5-S1 to be compensable, and ordered a referral to Dr. Patel. The OOJ reasoned that Mr. Argabright's preexisting disease or condition was asymptomatic prior to the compensable injury, but after that injury, his symptoms appeared and were continuously manifested. The OOJ found that based on the preponderance of the evidence, Mr. Argabright had shown that the disc bulges at L2-3 through L5-S1 should be held compensable, and that the referral to Dr. Patel was medically related and reasonably required. The BOR affirmed the OOJ's decision in its October 21, 2022, order. It is from that order that Blackhawk now appeals. Blackhawk's appeal is limited solely to the issue of compensability of the disc bulges; it does not appeal the referral to Dr. Patel.[2]

---

[2] Blackhawk's brief makes clear that the appeal is solely on the issue of the compensability of the disc budges.

## II. Standard of Review

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921, (Ct. App. 2022).

## III. Discussion

On appeal, Blackhawk asserts that the BOR committed clear legal error in its determination that Mr. Argabright's disc bulges at L2-L3 through L5-S1 were compensable. Blackhawk argues that the preponderance of the evidence establishes these conditions were chronic and preexisting and, while aggravated or exacerbated, were not discrete new injuries, and thus, not compensable.

In response, Mr. Argabright's argument is twofold. First, he argues that there is a lack of evidence in the record to show the bulging discs existed prior to his compensable

injury. Second, he argues compensability under *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) based on the manifestation of his symptoms after the compensable injury.

We must first address the sufficiency of the evidence to support a determination that Mr. Argabright's disc bulges were caused by the compensable injury. The March 9, 2021, MRI report revealed degenerative disc desiccation, as well as minimal to mild disc bulges. There is no indication in that report that his injuries were of a traumatic nature. Dr. Mukkamala, after completing an IME of Mr. Argabright and reviewing relevant records, diagnosed Mr. Argabright with lumbar sprain superimposed upon preexisting degenerative spondyloarthropathy. Dr. Mukkamala found that while the lumbar sprain was caused by the compensable injury, the degenerative condition was preexisting. Dr. Brooks authored an age of injury analysis and determined that Mr. Argabright suffered from chronic degenerative disc disease and chronic facet joint arthrosis from L2-3 through L5-S1. The MRI and the reports of Drs. Mukkamala and Brooks support a conclusion that the disc bulges were preexisting.

In contrast, Mr. Argabright argues that the diagnosis update form completed by the treating physician, Dr. Muscari, is evidence that the disc bulges were caused by the compensable injury. However, neither the diagnosis update nor the other documents from Dr. Muscari that were made a part of the record specifically opined that the disc bulges were caused by the compensable injury, or offered any explanation that would support such

conclusion. In short, Dr. Muscari asked the disc bulges to be made compensable with minimal justification for the request.

Mr. Argabright's argument that the disc bulges did not exist prior to the compensable injury is not supported by the clear weight of the evidence. To the extent that the BOR's order finds that the disc bulges were caused by the compensable injury, that finding is clearly wrong.

Next, Mr. Argabright argues that because his preexisting condition was asymptomatic until the compensable injury, his preexisting disc bulges should be found compensable under the rebuttable presumption announced in *Moore*. We disagree. Mr. Agrabright's argument fails to consider the *Moore* presumption in unison with the Supreme Court of Appeals of West Virginia's ("SCAWV") ruling in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), which *Moore* explicitly reaffirmed:

> "[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable." Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016).

Syl. Pt. 4, *Moore*, 247 W. Va. 292, 879 S.E.2d 779 (2022). The *Moore* Court then expanded on *Gill*, holding:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously

6

manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, 247 W. Va. 292, 879 S.E. 2d 779 (2022).

*Gill* unambiguously held that a discrete new injury may be compensable when it arises from an aggravation of a preexisting injury. The preexisting condition itself does not become compensable, only the discrete new injury. *Moore* reaffirmed and expanded on the holding in *Gill* and therefore the holdings in both cases must be considered together. When read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury.

Here, the BOR only addressed syllabus point five of *Moore* and determined the compensability of Mr. Argabright's preexisting disc bulges based on the manifestation of his symptoms following the compensable injury. Because the BOR did not consider *Moore* and *Gill* together, we reverse the BOR's order, in part, and find that it erred in summarily concluding that Mr. Argabright's preexisting disc bulges were compensable.

Even though the disc bulges are not compensable under this analysis, the treatment of the newly symptomatic disability is appropriate. In *Moore*, the SCAWV found cervical radiculopathy as a compensable condition, not the preexisting cervical degenerative disc

7

disease that was asymptomatic prior to the compensable injury. It reasoned that the evidence showed the compensable injury caused Mr. Moore to develop cervical radiculopathy, a new distinct injury. Here, Mr. Argabright's preexisting discs and degenerative disc desiccation were asymptomatic prior to the compensable injury. Following the compensable injury, Mr. Argabright developed pain in the areas affected by the preexisting conditions. The treatment of that pain is presumed to flow from the compensable injury, not the preexisting condition. In this matter, Blackhawk did not rebut the presumption, nor did it contest the order for referral to Dr. Patel on appeal.[3] Accordingly, we affirm the BOR's order, in part, with respect to the referral to Dr. Patel at the pain clinic.

Wherefore, based on the foregoing, we reverse, in part, and affirm, in part, the BOR's October 21, 2022, order.

**Reversed, in part, Affirmed, in part.**

---

[3] Blackhawk does not appeal the referral to Dr. Patel. Thus, this issue will not be addressed by this Court. *See Wheeling Park Commission v. Dattoli*, 237 W.Va. 275 n.2, 787 S.E.2d 546 n.2 (2016) (citing Rule 10(d) of the West Virginia Rules of Appellate Procedure).